# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**HILDA VAN HOEK,**

     **Plaintiff,**

**v.**

                                       **Case No. 8:17-cv-2447-WFJ-AAS**

**MCKESSON CORPORATION, et al.**

     **Defendants.**                      /

### Plaintiff's Statement of Disputed Facts

Plaintiff Hilda van Hoek responds to Defendants' Statement of Undisputed Facts ("SUF") as follows:

1.  Denied that Plaintiff is bringing only two claims. (*See* Doc. 21, Counts 1 to 5; Doc. 88; Doc. 89; Declaration of Hilda van Hoek ("HvH Decl.") ¶ 135.)

2.  Denied as stated as to identification, characterization, and number of sex discrimination instances upon which Plaintiff's sex discrimination claims are based. (*See* Doc. 21, Counts 1, 2, 4; Hilda van Hoek Deposition (HvH Depo.) Ex. 87, 88; HvH Decl. P 136.) Denied that Plaintiff has not identified evidence to support her sex discrimination claims. (*See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment; HvH Decl.; and evidence identified herein.)

3.  Denied as stated as to identification, characterization, and number of instances of retaliation upon which Plaintiff's retaliation claims are based. (*See* Doc. 21, Counts 3, 5; HvH Depo. Ex. 87, 88; HvH Decl. ¶ 137.) Denied that Plaintiff has not identified evidence to

support her retaliation claims. (*See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment; HvH Decl.; and evidence identified herein.)

4. Admitted that Plaintiff's employment as a sales representative that began in 1994 when hired by Physician Sales & Service, Inc., has continued; and that she is an at-will employee. The remaining allegations are denied as stated. (*See* HvH Decl.  ¶¶ 2-5, 9-14.) Plaintiff objects to the ambiguity of Defendants' use of "McKesson" as shorthand for "McKesson Medical-Surgical," given that there is no defendant in this case with such name; that two of the defendants have "McKesson Medical-Surgical" in their names; and that defendant McKesson Corporation is in the medical-surgical business.

5. Denied as stated. (*See* Paul Jensen Depo. ("PJ Depo.") (Doc. 132) 16:23 to 17:4, 17:7-8, 17:20-25.)

6. Denied as stated. (*See id.* 17:20-25.)

7. First sentence denied. (*See* HvH Decl. ¶¶ 15, 17-18, 20, 22-23, 41-45, 50-63, 67-68, 72-85, 99-112.) Second and third sentences and the "mere" characterization in footnote 2 denied. (*See* HvH Decl. ¶¶ 78, 89-90, 92, 138; PJ Depo. (Doc. 132) 42:2-8; 43:15-19; 44:12-13, :15-16; HvH Depo. (Doc. 130) 46:19-20.) As to footnote 3, denied that only five "accounts" are at issue. (*See* HvH Decl. ¶¶ 20, 36, 41-43, 52, 54-55, 69-83, 93-96, 100-103, 105-112, 116-121, 123-125, 128.)

8. First sentence denied as stated. (*See* HvH Decl. ¶ 139; Xiques Depo. (Doc. 135) 31:8-12, 31:14-24.) Second sentence admitted.

9. Second sentence admitted. First sentence denied as stated, as the cited testimony concerned whether Plaintiff had "assigned territory" and was not limited to a particular team. (*See also* Xiques Depo. (Doc. 135) 34:17-19.)

10. First two sentences admitted. Last sentence denied. (*See* HvH Decl. ¶ 139; Xiques Depo. (Doc. 135) 31:8-12, 31:14-24.)

11. Admitted only that the facts asserted are the norm. Otherwise denied. (*See* HvH Decl. ¶¶ 15, 17, 18, 20, 50-51, 52, 100-112, 121-128; Leisa Meredith Depo. 9:17 to 10:3, 10:14-16, 31:10-11, 32:13 to 33:15, 33:25 to 34:11, 48:4 to 49:8, 49:19 to 50:5, 50:10-17, 50:24 to 51:6, 51:10 to 51:24, 52:13 to 53:5, 53:8-10; Meredith Depo. Ex 1 at ¶¶ 5-7.)

12. Admitted.

13. First two sentences admitted, with exception of footnote 4. Footnote 4 denied. (*See* 57:8.) The assertion in the third sentence is not supported by the cited testimony and therefore is denied.

14. Denied: The assertion is vague in that the referenced "process" is not identified; and the cited testimony does not support the assertion.

15. Admitted.

16. First sentence admitted. Second sentence denied: the cited testimony does not support the assertions. Third sentence denied (cited testimony taken out of context of preceding testimony at 75:18-25; *see also* HvH Decl. ¶¶ 139-140).

17. First sentence admitted. The exception asserted in the second sentence is denied. (*See* Xiques Depo. (Doc. 135) 76:19 to 77:21 and Xiques Depo. Ex. 5 (8/13/2013 email).)

18. First sentence admitted. Second sentence is ambiguous and therefore denied. Third sentence denied (not supported by the cited testimony). Fourth sentence denied (not supported by the cited testimony; and *see* HvH Depo. 75:18-21; HvH Decl. ¶¶ 139-140; Xiques Depo. (Doc. 135) 31:8-12, 31:14-24).

19. First sentence denied as stated. (*See* HvH Decl. ¶ 19 (and cited exhibits); Exhibit 1 (acquisition date).)  Second sentence denied as stated. (*See* HvH Decl. ¶ 19 (and cited exhibits); HvH Depo. Ex. 21, 54 (1st page, top email), 66, 67, 74; Xiques Depo. (135) 8:17 to 9:12, 9:16-:25, 10:17-:24, 14:11-:25; Jensen Depo. (Doc. 132) 47:16 to 49:2, 49:5 to 49:16,  49:20 to 50:4, 50:13-35.)

20. Footnote 7 is denied. (*See* HvH Depo. Ex. 33, 1st page; HvH Depo. (Doc. 130-1) 109:4-13, 190:12-25.) Admitted that Jensen was not Brady's immediate supervisor but denied that Jensen lacked authority or involvement in decisionmaking concerning Brady. (*See* HvH Depo. Ex. 21, 66, 67, 74; HvH Decl. ¶¶ 47-48.)

21. Denied as stated. (*See* P. Jensen Depo. (Doc. 132) 33:18-22 ("I am compensated by just straight pay and then how company performance is at the end of the year. There is a quarterly bonus also based upon how my team is performing.").)

22. Admitted.

23. First sentence admitted. Second sentence denied. (*See* 12/12/2012 email from Xiques to Gary Steele at HvH Depo. Ex. 19, 001513; A. Soukkala Decl. (re Bates No. 000669-C) Ex. C, last 4 pages (2012 data).) Third and fourth sentences denied. (*See* HvH Depo. (Doc. 130) 86:9-25; Xiques Depo 45:20 to 46:21, 56:11-15, 57:17 to 58:4; Darin Sharp Depo. 60:15-23, 62:7-21.) (*See also* Meredith Depo. 52:13 to 53:5, 53:8-10.)  Fifth sentence mischaracterizes cited testimony and therefore is denied. Last sentence denied (not supported by the cited testimony; *see* HvH Decl. at ¶¶ 22-23.)

24. Admitted.

25. Admitted.

26.  First sentence denied. (*See* A. Soukkala Decl. (re Bates No. 000669-C) Ex. C (showing one FMC ship-to customer for Brady in 2008 to 2009 (Rivera) and none after that until August 2012 (Odom).) Footnote 11 last sentence denied as stated (mischaracterizes the cited testimony; *see also* HvH Depo. 163:15 to 165:12). Fourth sentence denied. (*See* HvH Decl. ¶¶ 41- 44.) Last sentence denied (not supported by the cited testimony; *see* HvH Decl. ¶¶ 41- 44.)

27. First sentence denied. (*See* A. Soukkala Decl. (re Bates No. 000669-C) Ex. C.)

28. Denied. This paragraph understates Plaintiff's December 1, 2012, email to Xiques reflected in Exhibit 16 to Plaintiff's deposition. Further, a reasonable jury could find that the email was a complaint about sex discrimination.

29.  Denied. (*See* Steele Depo. 40:23 to 41:2.

30. First sentence is admitted only to the extent that it reflects a portion of Xiques' email at Exhibit 19, 001513, to Plaintiff's deposition. Second sentence is denied (mischaracterizes Steele's 5-30-2013 email; *see also* Xiques Depo. (Doc. 135) 47:2-9, 47:12-25, 69:1-13; Xiques Depo. Ex. 4, 000695 (Doc. 135-2 at 13); HvH Decl. ¶¶ 32-34.)

31.  First sentence denied. (As to timing: Ex. 2 (PSS's 3-4-2013 response to EEOC charge) at 4.) (As to the reason: Sharp Depo. at 56:19-23 ("it was the HR complaint").) Last sentence denied (mischaracterizes the context of the cited testimony; *see also* HvH Decl. ¶¶ 50-51.)

32. Second sentence denied (mischaracterizes and understates Steele's May 30, 2012, email). Footnote 13 denied (not supported by cited testimony; and *see* Steele Depo.17:18-23, 18:17 to 19:2, 25:5-11, 26:5-13, 30:8-20, 31:8-13.)

33.   Second and third sentences denied. (*See* Steele Depo. 15:8-22, 30:8-20, 31:8-13; Meredith Depo. 56:9-23; 57:4 to 58:6; HvH Depo. Ex. 21 (both emails); Xiques Depo. 78:19 to 79:7; HvH Decl. ¶¶ 32-38, 47, 50.)

34. First sentence denied (not supported by cited document; HvH Decl. 19.) Second sentence denied (mischaracterizes cited testimony). Third sentence is denied as stated ("this" reference to mischaracterized second sentence). Last sentence admitted.

35.   The first sentence is vague (temporally and in broadly referencing "any" decisions) and therefore denied. Second sentence denied. (*See* Jensen Depo. at 33:18 to 34:7 (Jensen's compensation includes a "bonus opportunity" based on how the whole company performs).)

36.   First three sentences admitted. Fourth sentence is denied as stated ("it" not identified; cited evidence does not support that "she reviewed it again and submitted it"; quote incomplete).

37. Admitted. (*See* Steele Depo. Ex. D-2, 5/30/2013 Steele email to Xiques.) Footnote 14 denied (not supported by cited testimony). Second and third sentences denied (unsupported by cited document). Last sentence admitted.

38. First sentence admitted. Second sentence: admitted that Brady's supervisor reached out to Jensen; but denied as to the remainder of the sentence (mischaracterizes supervisor's comment quoted in cited document and testimony—Nehr provided his "understanding," not his reason; and *see* HvH Decl. ¶ 44). Third sentence admitted. Fourth sentence denied. (Not supported by cited testimony.) Fifth sentence: admitted that was Plaintiff's response when asked in 2019 at her deposition. Last sentence: denied that Boyes responded that "she" did not want Brady on FMC accounts. (*See* HvH Depo. Ex. 23, Boyes' email ("*We* do not want Clint on our accounts.") (emphasis added).)

39. Denied (mischaracterizes the cited testimony; and *see* HvH Decl. ¶ 141; HvH Depo. 163:15 to 164:19, 169:15-21 (Plaintiff's receipt of credit for some lab sales is result of new procedure); Jensen Depo. (Doc. 132-1) 137:11-15, 137:17-20, 139:20 to 140:16 (explaining current arrangement under which lab business unit and Plaintiff's business unit (Primary Care) share FMC lab account)

40. Denied. (HvH Decl. ¶¶ 121 to 129.)

41. Admitted.

42. Denied (misstates cited testimony).

43. Denied as to ship-to locations; otherwise admitted. (HvH Decl. ¶ 87.)

44. Denied as to number of ship-to locations; otherwise admitted.[1] (*Id.*)

45. Denied as to number of ship-to locations; otherwise admitted. (*Id.*)

46. Denied as to number of ship-to locations; otherwise admitted. (*Id.*)

47. Admitted.

48. First, second, and fourth sentences admitted. Third sentence denied. (*See* Jensen Depo. at 33:18 to 34:7 (his compensation includes "bonus opportunity" based on how the whole company performs).)

49. First sentence admitted only as to assertion that Williams contacted Jensen and Loisey on April 29, 2013. Remainder of first sentence denied. (Mischaracterizes and obfuscates

---

[1] The denials to Paragraphs 44 to 46 are inconsistent with Plaintiff's prior agreement to those paragraphs. As shown in Paragraph 87 of Plaintiff's declaration, Plaintiff testifies she was mistaken in her deposition testimony in assuming the number of ship-to accounts that Capriati, Hosley, and Anderson have. The information provided in Plaintiff's declaration is in any event based on data obtained nearly three months after Plaintiff's deposition and almost a month after Defendants filed their motion for summary judgment.

the nature and content Williams' communication in the cited document.) Second sentence denied. (As to Access 2, see Ex. 32 (Williams not yet assigned to Access 2); HvH Decl. ¶ 60).) (As to the Access-owned accounts, *see* HvH Decl. ¶ 55 (Access Health Care Physicians LLC ("AHCP LLC") and Qualcare Medical Center and the east-coast ship-to accounts attached to them were Access-owned accounts); HvH Decl. Ex. I (showing such accounts' bill-to account numbers and ship-to locations and account numbers); HvH Depo. Ex. 33 (all Access-owned east-coat ship-to accounts identified in HvH Decl. Ex. I reflected as nonshared ("N/S") ship-to accounts of Plaintiff: "Sura, Md Sandeep" (ship-to # 40598546) at 001519; "Pirani, Md Shaheen" (ship-to #34022021) at 001521; "Gutierrez, Md Juana M." (ship-to # 40575542) at *id.*; "Haskett, Md Jay" (ship-to # 34022120) at 001522; "Kung, Md Luke" (ship-to # 34022131) at *id.*; "Perl, Md Charles" (ship-to # 34022137) at *id.*); Ex. 3 (highlighted areas) (Access-owned east-coat ship-to accounts identified in HvH Decl. Ex. I reflected as nonshared); Loisey Decl. Ex. A (zero of these ship-to accounts identified; in fact, zero ship-to accounts reflected under billing account number for AHCP LLC (34021981) or Qualcare (40560294); Xiques Depo. 90:4-10 (as of the time of the acquisition, Plaintiff was handling "totality" of Access accounts), 106:15-19 (Plaintiff had 100 percent of the business for Access-owned offices during time when Xiques was sales manager over her.) Third sentence:  admitted only that the quote is part of Jensen's reply to Williams' April 29, 2013, email reflected at Ex. 32 to Plaintiff's deposition. Fourth sentence denied (not supported by cited exhibit.) Last sentence denied. (Proper objection asserted as to question at 188:4-5.)

50.   Admitted. Second sentence denied. (Not supported by cited testimony; *see* HvH Decl. at ¶ 64 (Xiques said he approved transferring the Access east-coast accounts to Williams); HvH Decl. ¶¶ 59-60 (the Access east-coast billing and ship-to accounts were transferred to

Williams).) Third sentence denied. (Cited testimony omits the next four lines (203:13-17) (Xiques told Plaintiff that was the reason.) Fourth sentence is denied. (*See* Ex. 3 and Loisey Decl. Ex. A (neither of which reflects transfer of Access west-coast accounts from Williams to Plaintiff.) Last sentence denied (unsupported by cited testimony).

51. First sentence denied. (As to Access 2, see Ex. 32 (Williams not then assigned to Access 2); HvH Decl. ¶ 60).) (As to the Access-owned accounts, *see* HvH Decl. ¶ 55 (Access Health Care Physicians LLC ("AHCP LLC") and Qualcare Medical Center and the east-coast ship-to accounts attached to them were Access-owned accounts); HvH Decl. Ex. I (showing such accounts' bill-to account numbers and ship-to locations and account numbers); HvH Depo. Ex. 33 (all Access-owned east-coat ship-to accounts identified in HvH Decl. Ex. I reflected as nonshared ("N/S") ship-to accounts of Plaintiff: "Sura, Md Sandeep" (ship-to # 40598546) at 001519; "Pirani, Md Shaheen" (ship-to #34022021) at 001521; "Gutierrez, Md Juana M." (ship-to # 40575542) at *id.*; "Haskett, Md Jay" (ship-to # 34022120) at 001522; "Kung, Md Luke" (ship-to # 34022131) at *id.*; "Perl, Md Charles" (ship-to # 34022137) at *id.*); Ex. 3 (highlighted areas) (Access-owned east-coat ship-to accounts identified in HvH Decl. Ex. I reflected as nonshared); Loisey Decl. Ex. A (zero of these ship-to accounts identified; in fact, zero ship-to accounts reflected under billing account number for AHCP LLC (34021981) or Qualcare (40560294); Xiques Depo. 90:4-10 (as of the time of the acquisition, Plaintiff was handling "totality" of Access accounts), 106:15-19 (Plaintiff had 100 percent of the business for Access-owned offices during time when Xiques was sales manager over her.)  Second sentence denied. (*See id.* (reflecting that the Access east-coast accounts were nonshared accounts <u>of Plaintiff</u>); those nonshared accounts of Plaintiff were transferred to Williams (*see* HvH Decl. ¶¶ 52-66; HvH Decl. Ex. U; Jensen Depo. (Doc. 132) 113:16 to 114:10). Third

sentence is denied. (*See* Ex. 3 and Loisey Decl. Ex. A (neither of which reflects transfer of Access west-coast accounts from Williams to Plaintiff.) Footnote 18 denied. (Unsupported by cited document and testimony.)

52. Denied. (HvH Decl. ¶¶ 52-66; HvH Decl. Ex. U; Jensen Depo. (Doc. 132) 113:16 to 114:10).

53. First sentence is denied: denied that there was only "a" spreadsheet (*compare* cited exhibit *with* HvH Depo. Ex. 33 at 001516); denied that the alleged "reconciliation process" was "at the time of the acquisition" (*compare* Ex. 1 (reflecting 2-22-2013 as date of acquisition) *with* Defendants' cited exhibit (dated 11/15/2013). Second to fourth and last sentences are denied. (Data in cited exhibit is hearsay.) Fifth sentence denied as stated. (Temporally mischaracterizes cited testimony.)

54. Denied. (*See* HvH Decl. ¶¶ 52-66; HvH Depo. 61:18; *see also* Jensen Depo. at 33:18 to 34:7).

55. Admitted.

56. First sentence denied as stated. (Cited document asks to "consolidate these accounts so that we have one rep"). Second sentence admitted. Third sentence denied as stated. (Mischaracterizes Jensen's communication; Jensen did not "explain".)

57. Denied. (Incomplete, understated description of Plaintiff's communication in the cited document.)

58. Admitted except to the extent that an inference is sought that Jimenez was of low stature and lacked authority at Access. (*See* Ex. 4, Maria Jimenez Statement ("Jimenez Decl.") at ¶¶ 2-3, 13, 18; Ex. 5, Regina Conner Statement ("Conner Decl.") at ¶¶ 5-7.)

59. First sentence denied as stated. (Incomplete, understated description of the content of Jimenez's email reflected in the cited email.) Second denied as stated. (Incomplete, understated description of Plaintiff's comments in the cited email.) Third sentence denied as stated. (Incomplete, understated description of Jensen's remarks in the cited email; omits that Darin Sharp was copied on the response.)

60. First sentence denied. (Unsupported by the cited exhibit and testimony that Jensen "spoke" to Hayes.) Second sentence: inference that Jensen's communication was spoken is denied (*id.*); characterization that Jensen "explained" is denied. Third sentence: admitted that Hayes made that statement; denied that the statement was in response to the comment reflected in the second sentence (*see* earlier emails in the chain for the context). Fourth sentence denied. (*See* Conner Decl. at ¶ 7; 8-2-2016 10:36 PM email from Jensen to Loisey at Ex. 7 (stating that Jensen "received a communication with direction from an officer of Access to move them to a single rep (Hilda van Hoek)")[2].)

61. Admitted.

62. Admitted that Jimenez and Hayes were scheduled to participate in the call, but inference that other persons also were scheduled to participate is denied. (*See* HvH Depo. Ex. 46 (Darin Sharp, Regina Conner, Alexandra Loisey, Lyneice Mackey reflected as "required attendees".) Also denied that the call was scheduled for 4:00 p.m. (*Id.*)

63. First sentence denied. (Unsupported by cited exhibit.) Last sentence denied. (Does not fully and accurately reflect Plaintiff's communications in the cited email.)

---

[2] Jensen's email to Loisey indicated that he was providing with the email an "email exchange" he had with Hayes. However, the referenced email exchange was not included with Jensen's email to Loisey when produced by Defendants.

64. First sentence: denied that only Jensen and Hayes were on the referenced call. (*See* Jimenez Decl. ¶ 18 and Conner Decl. ¶ 5 (Jimenez and Conner also were on the call.) Third sentence denied. (Hearsay; and *see* Jimenez Decl. ¶¶ 16-17.) Last sentence denied, including the footnote. (Conner Decl. ¶¶ 6-11; Jimenez Decl. ¶¶ 18-19.)

65. Admitted.

66. Second and third sentences denied. (*See* Jensen Decl. (Doc. 132) 111:23 to 112:6.) Fourth sentence denied. (*See* Ex. 6, 1st page, 8-22-2016 email from M. Jimenez to Jensen, with CC to Hayes (although Jimenez is the author of the email, "we" can be construed as including Hayes.)  Last sentence denied. (*See* Jimenez Decl. ¶ 21; HvH Decl. ¶ 89 (and cited Ex. K).)

67. Admitted except that the inference in the last sentence that Access now has and Plaintiff owns only one bill-to account. (HvH Depo. 64:14-18 (two billing accounts current, one covering the Access-owned portion and the other covering the IPA portion).

68. The allegations here are not material. Assuming a response is required, they are denied: When asked if she had set up a business review in response to the September 13 and October 8, 2016, emails from Jensen, Plaintiff testified she didn't remember. (*See* HvH Depo. 251:2-3, 254:21-24.) The testimony in reference to the communications dated over a year later and included in Exhibit 59 is ambiguous as to whether it concerned a different business review than the one referenced in the 2016 emails.

69. First sentence denied as stated. (Misstates Plaintiff's cited testimony.) Second sentence admitted. Last sentence denied. (Cited testimony and document do not support "several instances" or "assisting Plaintiff").

70. Admitted except for the assertion that "Plaintiff received credit," which is not supported by the cited testimony or document.

71. First and second sentences are admitted. The inference that Plaintiff was responsible for the product description is denied. (*See* HvH Decl. ¶ 142.)

72. Denied. (The cited document and testimony do support that the new ship-to locations were set up under Plaintiff.)

73. First two sentences are denied in seeking an inference that Knight's account with Defendants was opened in April 2014, rather than March 2014. (*See* HvH Decl. Ex. L (Knight's new account was opened, with Plaintiff as the assigned representative, on March 12, 2014.) Third sentence denied. (Unsupported by the cited testimony; *see* 8-20-2014 email from L. Meredith to Jensen and Plaintiff in HvH Depo. Ex. 74, at 000773-774 ("There is no credit app on file, so I cannot determine how the request was initiated."); *see also* Xiques Depo. 79:22 to 80:1-10, 80:17 to 81:1; HvH Decl. ¶ 19; HvH Depo. Ex. 33 at 001520, 7th row from bottom (showing active ship-to account for Knight serviced by Plaintiff in FY 2013, when Xiques was her supervisor; HvH Depo. Ex. 74 at 000772 (Jensen stating his belief that "Hilda did have running sales in the [Knight] account").

74. First and sentences denied. (Not supported by cited testimony.) Admitted that Xiques assigned the Knight account to Brady, otherwise denied (not supported by cited testimony). Last sentence admitted.

75.  Denied as stated. (*See* HvH Decl. Ex. L, 8-19-2014, L. Meredith email re "Info on Knight Account" (Knight account opened 3-12-2014 under Plaintiff and "has been deactivated"; on 4-2-2014 account opened for Clint for same address).

76. Admitted.

77. To the extent Defendants seek inferences that Plaintiff unduly delayed in notifying management that the Knight account should have been assigned to her rather than Brady and

that Defendants otherwise would not have known that Plaintiff should have been assigned the account, ¶ 77 is denied. (*See* HvH Decl. ¶ 103; HvH Decl. Ex. L and M; HvH Depo. Ex. 33 at 001520, 7th row up from bottom (showing active ship-to account for Knight serviced by Plaintiff in FY 2013, when Xiques was her supervisor); Xiques Depo. 84:2-3 (Xiques assigned Knight account to Brady), 79:19 to 80:10 (Xiques knew who Knight's office manager Lisa DeLong was), 80:17 to 81:1 (admitting that Plaintiff had been Knight's rep for 15 years), 81:3 to 25 (admitting that DeLong had complained to Xiques several times about Brady).

78.  Denied.  (Not supported by cited document, which reflects there was credit application to review and that Meredith had not seen any other paperwork, much less did not know if any other paperwork existed.)

79.  Admitted that van Hoek is not aware of communications directly from Dr. Knight on this issue; however, she is aware of communications of Dr. Knight's representative who was handling this issue for him.  (HvH Decl. ¶¶ 103, 105-06; HvH Depo. Ex. 72.)

80.  Admitted.

81.  Denied.  (Jensen stated in the cited exhibit (HvH Decl. Ex. 74) that the problem was a nuisance; told Xiques that van Hoek "has pushed the envelope"; said he was "not defending Hilda"; and put the matter off on Xiques. Moreover, in the very same email chain, van Hoek reported the information by Leisa Meredith that the Knight account was opened and assigned to van Hoek on March 12, 2014; and Meredith said that "[t]here is no credit app on file, so I cannot determine how the request was initiated" and merely speculated that "a fairly new team member" may have erred in failing to check for an existing account

82.  Admitted that Jensen put the matter off on Xiques and told him he should have another conversation with the customer.  Denied that he invited Xiques to discuss the matter

14

after he spoke to the customer.  Admitted that Jensen complained that he was losing a sale. Admitted that van Hoek believed Jensen was advocating for her and for himself.  (HvH Depo. Ex. 74.)

83.  Admitted that Jensen told van Hoek that he was going to contact her customer; prohibited her from having any contact with her customer; and told her that he understood her position.  (Dkt. 130, ex. 74 and 290:23-25.)

84.  Admitted that Jensen and Xiques discussed the assignment of the account, and that Xiques contacted Dr. Knight's office.  Denied that Xiques made the contact to obtain the preference of Dr. Knight's office, because the preference was already known from the e-mail from Dr. Knight's office, forwarded by van Hoek.  (Dkt. 130, Ex. 72).  Footnote 26 denied. (*See* HvH Depo. Ex. 72 (Plaintiff's 8-20-2014 notice to Xiques and Jensen that the customer did not want Brady on the account); Xiques Depo. 79:19 to 80:10 (Xiques knew who Knight's office manager Lisa DeLong was), 80:17 to 81:1 (admitting that Plaintiff had been Knight's rep for 15 years), 81:3 to 25 (admitting that DeLong had complained to Xiques several times about Brady). Admitted that Jensen and Xiques decided to leave the account with Brady.

85.  Admitted that the decision was explained to Plaintiff, and admitted that the situation was unique, but only because of the extended period of time to get Plaintiff an answer.  (HvH Depo. Ex. 74.).  Denied customer service did not identify the customer as an active customer of Plaintiff. (*See* HvH Decl. Ex. L, 8-19-2014, L. Meredith email re "Info on Knight Account" (Knight account opened 3-12-2014 under Plaintiff.) Admitted that the account was given to Xiques who assigned it to Brady. Denied that Brady had established a business relationship with the customer; rather, Brady had failed to establish such relationship to the customer's satisfaction.  (Dkt. 130, Ex. 75).

86.  Denied that the cited exhibit reflects such a commitment by Xiques.

87.  Admitted.

88.  Admitted.

89.  Admitted, except for the unsupported assertion regarding Marsonek's location.

90.  Admitted

91.  Admitted that's what Jensen told Plaintiff. Denied that what he told Plaintiff is consistent with the agreement reached with Schmidt, as reflected in Schmidt's email at Ex. 66 to Plaintiff's deposition.

92.  Admitted.  Plaintiff did not lose any business beyond that which she previously lost, pursuant to the agreement renewed here, as a result of Xiques decision of March 7, 2014, which losses were ongoing.  See ¶ 90, above.

93.  Admitted.

94.  Admitted.

95.  Admitted, with the qualification that although it is Defendants' stated policy that customer requests always come first, Defendants disregarded the customer requests favoring Plaintiff of FMC, Access, FHPG, and Knight. (HvH Decl.)

96.  Admitted, except the assertion that her sales goal and forecast were reduced because of the transfer of the FHPG account.  (Dkt 130, 278:-25).

97.  Defendant's new credit application does not contain a space to record the sales representative's name.  (DKt. 130, 301:10-14).

98.  Admitted.

99.  Admitted.

100.   First sentence admitted. Second sentence denied. (HvH Depo. 309:6-22; HvH Decl. ¶¶ 116-117 (including the citation to HvH Decl. Ex. R).

101.   Admitted, except that the statement that Jensen allowed Capriati (Carmen) to retain credit for the initial sale, which was for setting up a new office and had been worked up by van Hoek with considerable effort, because Defendants had assigned the customer to Capriati.  (HvH Decl. ¶116).

102.   Admitted.

103.   Disputed that Brady was assigned one FMC bill-to account, that of Dr. Knight.  In fact, he was also assigned the overall bill-to for FMC on or about December 1, 2012, and held it for more than three months.  (HvH Decl ¶¶20, 350; Dkt.135, 46:2-21).  Disputed that Brady had only one ship-to account with FMC, as van Hoek states in her declaration that she handled billing problems for his FMC ship-to accounts, in the plural, spending hours going over invoices, and handled the set-up of a new ship-to account that he was assigned after he was given the bill-to account.   (HvH Decl. ¶44).  Disputed that van Hoek does not claim she should have been assigned any of Brady's other accounts; she maintains that the Continue Care account and the Dr. Murphy account should have been restored to her. (HvH Decl ¶¶18, 50-51).  Admitted that Plaintiff did not lose any business beyond that which she previously lost, pursuant to the agreement renewed here, as a result of Xiques decision of March 7, 2014, which losses were ongoing.  Admitted that Brady and van Hoek lost their FHPG business in 2016.

104. First sentence denied because such figure would be accurate if it were solely in reference to the Access-owned accounts on the east coast (*see* No. 49 above, identifying the Access-owned east-coast accounts). Plaintiff lost not only those accounts to Williams, but also the Access 2 accounts on the east coast. (HvH Decl. ¶¶ 52-60.) Last sentence denied as an

17

understatement of Plaintiff's claims: the east coast Access accounts that Plaintiff cultivated were taken away from her and given to Williams; she continued to perform the work on the accounts thereafter, yet Williams, not she, was and continues to be compensated; when the customer later requested that all its accounts be assigned to Plaintiff as the sole representative, the request was not honored; and Plaintiff performs extensive work on the other Access sales representatives' accounts, Plaintiff is not compensated. (Pl. Decl. ¶¶ 52-92.)

105.  Denied that Plaintiff's 2012 EEOC charge "only complained about the assignment of one account." The charge alleged both sex discrimination and retaliation. As to sex discrimination, the scope of the charge was not limited to FMC. Rather, Plaintiff broadly alleged that "[d]uring my employment, Respondent has favored male representatives with more lucrative assignments and has interfered with female employees in their efforts to cultivate and secure customers." Further, "the assignment" terminology used by Defendants obfuscates and understates the adverse employment actions alleged regarding FMC. Moreover, as to retaliation, the charge alleged Plaintiff's protected activity of complaining of sex discrimination during the phone call with Sharp and Sharp's retaliatory response to her comment.

106. Admitted.

107. Last sentence denied. (HvH Decl. Ex. S (2015 EEOC charge); Ex. 8 (Plaintiff's submissions to FCHR investigator 3-3-2016); Ex. 9 (Plaintiff's submission to FCHR 3-4-2016); Ex. 10 (Plaintiff's submissions to FCHR 3-14-2016); Ex. 17 (3-16-2016 email from FCHR investigator to Defendants' attorney;  Ex. 11 (Plaintiff's submissions to FCHR 8-31-2016); Ex. 12 (state court docket sheet); Doc. 1-4 at 97-101 (Plaintiff's Unopposed Motion to File Third Amended Complaint, served and filed 8-14-2017); Doc. 1-4 at 102-124 (Third Amended Complaint and Demand for Jury Trial, filed and served 8-14-2017); Ex. 13 (parties' attorneys'

emails re proposed order on motion for leave to file third amended complaint); Ex. 19 (correspondence to state court judge re agreed proposed order); Doc. 1-4 at 125-26 (state court's 9-18-2017 order granting motion for leave to file third amended complaint).)

108. Second sentence admitted except to the extent it seeks an inference that the pleading encompassed no other complaints about Defendants' conduct after 2012, it is denied. (*See* ¶ 17 of 12-12-2014 complaint.)

109. Admitted.

110. Admitted.

111. First sentence admitted. Second sentence denied. (The allegations in the cited charge are broader, including that Defendants "favored male sales representatives with more lucrative assignments and interfered with female employees in their efforts to cultivate and secure customers"; that Plaintiff on several occasions "developed an account only to be removed so that it could be given to a male sales representative"; that "[d]iscrimination in pay, based on my sex, continues through the date of this Charge"; and that the charge included retaliation. Further, Plaintiff included all the actions she complains of that occurred through Aug. 2016 in her submissions to FCHR: Ex. 8 (Plaintiff's submissions to FCHR investigator 3-3-2016); Ex. 9 (Plaintiff's submission to FCHR 3-4-2016); Ex. 10 (Plaintiff's submissions to FCHR 3-14-2016); Ex. 14 (FCHR determination of reasonable cause, 6-15-2016).)

112. Last sentence denied. (See response to ¶ 111, above.)

113. Admitted.

114. Admitted.

115. Denied. (*See* Ex. 16, 8-17-2016 request for information from FCHR ("Please ask Complainant for clarification on which adverse employment actions, including any accounts

that were taken from Complainant, that occurred within 365 days prior to her FCHR filing date of August 10, 2015."); Ex. 8 (Plaintiff's submissions to FCHR investigator 3-3-2016, which included her complaints relating to the Access, Knight, FHPG, FMC, and Prime Care accounts); Ex. 9 (Plaintiff's submission to FCHR 3-4-2016, document relating to FHPG); Ex. 10 (Plaintiff's submissions to FCHR 3-14-2016, documents relating to Knight, FHPG, and FMC); Ex. 14 (FCHR's 6-15-2016 determination of reasonable cause).

116. Denied. (*See* Ex. 16, 8-17-2016 request for information from FCHR investigator ("Please ask Complainant for clarification on which adverse employment actions, including any accounts that were taken from Complainant, that occurred within 365 days prior to her FCHR filing date of August 10, 2015."); Ex. 8 (Plaintiff's submissions to FCHR investigator 3-3-2016, which included her complaints relating to the Access, Knight, FHPG, FMC, and Prime Care accounts); Ex. 9 (Plaintiff's submission to FCHR 3-4-2016, relating to FHPG); Ex. 10 (Plaintiff's submissions to FCHR 3-14-2016, relating to Knight, FHPG, and FMC); Ex. 14 (FCHR's 6-15-2016 determination of reasonable cause).

117. Admitted.

118. First sentence: denied that the EEOC notice of dismissal specifies which determination of FCHR it adopted. Second sentence denied as understated in saying the EEOC notice said "that Plaintiff may file a lawsuit under federal law" but omitting that the notice further said "in *state* or federal court" (emphasis added). Third sentence denied to the extent Defendants may be seeking an inference that Plaintiff received the EEOC notice prior her attorney's receipt of the notice. (HvH Depo. Ex. 9 shows that the notice was sent to Plaintiff's attorney, rather than directly to Plaintiff.)

119. Admitted.

120. Last sentence denied. (Ex. 12 (state court docket sheet); Doc. 1-4 at 97-101 (Plaintiff's Unopposed Motion to File Third Amended Complaint, served and filed 8-14-2017); Doc. 1-4 at 102-124 (Third Amended Complaint and Demand for Jury Trial, filed and served 8-14-2017); Ex. 13 (parties' attorneys' emails re proposed order on motion for leave to file third amended complaint); Ex. 19 (correspondence to state court judge re agreed proposed order); Doc. 1-4 at 125-26 (state court's 9-18-2017 order granting motion for leave to file third amended complaint).)

121. First sentence: denied that the third amended complaint is Plaintiff's current pleading. (Doc. 21.) Second sentence is denied. (Ex. 12 (state court docket sheet); Doc. 1-4 at 97-101 (Plaintiff's Unopposed Motion to File Third Amended Complaint, served and filed 8-14-2017); Doc. 1-4 at 102-124 (Third Amended Complaint and Demand for Jury Trial, filed and served 8-14-2017); Ex. 13 (parties' attorneys' emails re proposed order on motion for leave to file third amended complaint); Ex. 19 (correspondence to state court judge re agreed proposed order); Doc. 1-4 at 125-26 (state court's 9-18-2017 order granting motion for leave to file third amended complaint); Doc. 1-4 at 129-32.)

Dated: December 10, 2019                  Respectfully submitted,

                                          **/s/ Kathryn S. Piscitelli**
                                          Kathryn S. Piscitelli
                                          Florida Bar No. 368598
                                          P.O. Box 691166
                                          Orlando, FL 32869-1166
                                          Phone: (407) 491-0143
                                          Email: kpiscitelli1@cfl.rr.com
                                          Secondary email: kpiscitelli2@gmail.com

                                          **/s/ Peter F. Helwig**
                                          Peter F. Helwig
                                          Florida Bar No. 0588113

HARRIS & HELWIG, P.A.
6700 South Florida Avenue, Suite 31
Lakeland, Florida 33813
Phone: (863) 648-2958
Email: pfhelwig@tampabay.rr.com

**Attorneys for Plaintiff**