# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HILDA VAN HOEK,

      Plaintiff,

v.                               Case No. 8:17-cv-02447-T-02AAS

McKESSON CORPORATION,
a foreign corporation, *et al.*,

      Defendants.

_____/

## ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. Dkt. 128. Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment. Dkt. 156. Defendants filed a reply. Dkt. 165. The Court held a hearing on this matter on December 20, 2019. At the Court's request, the Parties filed supplemental briefing on the Florida Civil Rights Act ("FCRA") procedural issues. Dkts. 171 & 172. With the benefit of full briefing and able argument by both sides, the Court denies Defendants' Motion for Summary Judgment on all claims, Dkt. 128, pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

Plaintiff, Hilda Van Hoek, is a current, or former, employee of Defendants, McKesson Corporation, PSS World Medical, Inc., McKesson Medical-Surgical Inc., and McKesson Medical-Surgical Top Holdings Inc. Plaintiff alleges five

Counts of discrimination and retaliation against Defendants: (1) "FCRA—Sex Discrimination—Pre-Merger Discrimination of PSS World," (2) "FCRA—Sex Discrimination—Post-Merger Discrimination of Defendants," (3) "FCRA—Retaliation," (4) "Title VII—Sex Discrimination—Compensation Discrimination of Defendants," (5) "Title VII—Retaliation." Dkt. 21.

Plaintiff began her employment with Defendants, or Defendants' predecessor companies, in 1994 as a sales representative. Plaintiff filed her first Equal Employment Opportunity Commission ("EEOC") Complaint on December 27, 2012 which was pending until July 25, 2013. Dkt. 21 at 7–8; *see* Dkt. 1-4 at 73–74. Plaintiff filed her initial state court Complaint on December 12, 2014. Dkt. 1-4 at 1. Plaintiff filed an Amended Complaint in state court on June 27, 2015. Dkt. 129 ¶ 110. Plaintiff filed a second EEOC Complaint on July 31, 2015 which was pending until May 16, 2017 when the EEOC adopted Florida Commission on Human Relations' ("FCHR") no-cause determination. Dkt. 1-4 at 76–78; Dkt. 21 at 10–11; Dkt. 129 ¶¶ 111–18.[1] On November 6, 2015 Plaintiff filed a Second Amended Complaint in State court after obtaining written consent from the Defendants. Dkt. 129 ¶ 112 & Dkt. 157 ¶ 112. Plaintiff received the letter providing her 90 days to file a federal lawsuit on May 16, 2017. Plaintiff moved to

---

[1] Although Plaintiff disputes parts of Dkt. 129, the relevant dates used here are undisputed. Plaintiff's responses to Defendants' undisputed facts can be found at Dkt. 157.

amend her Complaint on August 14, 2017 and filed a Third Amended Complaint on September 20, 2017. Dkt. 1-4 at 97–126. The case was removed to federal court on October 18, 2017. Dkt. 1. Plaintiff filed a Fourth Amended Complaint on December 13, 2017. Dkt. 21.

The conduct underlying the Plaintiff's claims occurred over the better part of the last decade. Plaintiff alleges that seven accounts—Florida Medical Clinic ("FMC"), Dr. Knight, Florida Hospital Physician Group ("FHPG"), Access Health Care ("Access"), Prime Care, Tower, and Neuspine—were taken, either permanently or temporarily, from her because of sex discrimination or as retaliation. She further alleges that customers' requests to have her reinstated as a sales representative or for her to be the sole sales representative were ignored or delayed, as opposed to when a customer requested a man be the sole sales representative and the request was granted.

Plaintiff alleges that she spent several months cultivating a relationship with a former customer, FMC, and arranged having PSS World returned to FMC's approved bid list in late 2012. But on December 1, 2012, Area Sales Manager Carlos Xiques removed Plaintiff from the account and made Clint Brady the lead. Plaintiff alleges that when she complained about this to Regional Sales Manager Darin Sharp he "falsely stated that this had already been accomplished by Brady" and grew hostile and terminated the call when she complained of an "old boy

system." Dkt. 21 at 6–7. Plaintiff alleges that FMC complained about having Mr. Brady as their sales representative and requested to work only with Plaintiff. Plaintiff was reinstated as the lead on March 30, 2013 but alleges that Defendants did not compensate her for her lost income due to her temporary removal and that she was required to perform work on portions of the account that remained with Mr. Brady, for which she was not compensated. *Id.* at 7. Plaintiff further alleges that in October 2014 Gary Steele of FMC objected to having Mr. Brady on the account and requested to work with Plaintiff, but that Defendants refused this request in November 2014. *Id.* at 9.

Plaintiff alleges that after McKesson's acquisition of PSS World in February 2013, she was removed from her east coast Access accounts and they were given to a man, Craig Williams. Plaintiff alleges that the reason provided for why Mr. Williams received the accounts was that the accounts were given to the representative with greater sales for the prior six months. But Plaintiff alleges that this reason is pretext because she had substantial sales to Access during that time frame while Williams had none. She also alleges that she continued to perform work on those accounts although Williams received the commissions. Dkt. 21 at 8. Plaintiff further alleges that in August on 2016, Access's request to have Plaintiff designated as the sole sales representative was denied, despite a similar request being granted for a male sales representative. *Id.* at 11.

Plaintiff alleges that when Dr. Knight left a medical practice that was a long-time client of Plaintiff's to open his own practice, the account was initially assigned to her in April 2014. But two weeks later, Mr. Xiques reassigned the account to Mr. Brady without researching the history on the account per company policy. In November 2014, when it was determined that company policy was not followed, the account was still not returned to Plaintiff, even though when Plaintiff was accidentally assigned a man's account, she had to return it.

In February 2014, Plaintiff alleges that despite FHPG's request to have Plaintiff handle its accounts in Hillsborough, Pasco, and Pinellas Counties so that they only had to work with one sales representative, the Pinellas County account was given to Mr. Brady. Plaintiff alleges that she performed work on this account until April 2016, but that Mr. Brady received the commissions. *Id.* at 9.

In December 2015, Plaintiff alleges that she cultivated a new customer, Prime Care, and developed a purchase order for about $40,000. But after the order was complete, her manager, Paul Jensen, assigned the account to another representative and instructed Plaintiff to turn over all her work. The account was eventually returned to Plaintiff, but she did not receive the commission for the initial sale. *Id.* at 10.

In her supplemental response to Defendants' interrogatories Plaintiff added Tower to the list of accounts that she alleges were taken from her. Plaintiff alleges that after her Fourth Amended Complaint was filed her Tower Habana ship-to accounts were reassigned to a man. Dkt. 85-4 at 2. Mr. Jensen was asked about Tower being transferred during his deposition. Dkt. 132 at 15–16.

Finally, Plaintiff alleges that Neuspine was taken from her after she serviced the account for seven months and given to another sales representative who had opened an account with the customer earlier but never made any sales. Plaintiff alleges the account was reassigned on August 1, 2019 and Jensen emailed her saying the other sales representative would be the lead on August 9, 2019. Dkt. 156-1 ¶¶ 130–34.

Defendants argue that Plaintiff is merely questioning Defendants' business judgment and that she cannot establish a claim of gender discrimination or retaliation. Dkt. 128 at 4. Defendants also argue that Plaintiff's claims are procedurally barred for failure to exhaust administrative remedies, failure to seek an administrative hearing on the FCRA's no-cause determination, and failure to timely file claims. *Id.* at 16–25.

## LEGAL STANDARD

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve any reasonable doubts in the

non-moving party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## DISCUSSION

Defendants argue that Plaintiff's claims lack merit and are procedurally barred or untimely. First, Defendants argue that Plaintiff's claims fail on their merits. Second, Defendants raise two procedural issues with Plaintiff's claims: failure to file within the 90-days required by Title VII and an FCRA procedural bar. Finally, Defendants move to strike as a sham the Plaintiff's affidavit filed as part of her response to their summary judgment motion.

For the reasons discussed below, the Court denies Defendants' Motion. First there remain genuine issues of material fact that require submission to a factfinder. Second, the Court finds that Plaintiff met the necessary procedural requirements to file her lawsuit. Third, the Court declines to strike Plaintiff's affidavit as a sham, but grants the Defendants leave to depose Plaintiff with regard to Neuspine.

1. <u>Merits of Gender Discrimination and Retaliation Claims</u>

Defendants argue that Plaintiff failed to allege sufficient material disputed facts. But after reviewing the record and hearing oral arguments on the matter it is

clear there remain disputed issues of material fact which prevent summary judgment.

Plaintiff argues that she has made a sufficient showing to meet either the *McDonnell Douglas* standard or the "convincing mosaic" approach to survive summary judgment. The Court agrees. There remain disputed material facts which require a jury determination. For example, it is disputed why the reasons for granting or refusing to grant a single sales representative differed between the FMC and Access. Further, there remain disputes over when and why customer preferences are granted in some circumstances but not in others. These, and other disputes, leave sufficient issues of material fact which require a factfinder to judge the evidence and the credibility of the witnesses. Thus, summary judgment would be improper.

2. Title VII 90-Day Filing Requirement

Defendants argue that Plaintiff should be barred from bringing her Title VII claims because she failed to file her federal suit within 90-days of receiving her right to sue letter. Plaintiff received the letter providing her 90 days to file a federal lawsuit on May 16, 2017. Plaintiff sought Defendants' consent to amend on August 7, 2017. Plaintiff received Defendants' consent and moved the court to

amend her complaint on August 14, 2017. Plaintiff filed the Third Amended Complaint on September 20, 2017.

The requirement to file a Title VII claim within 90 days of receiving the right to sue letter "is not a jurisdictional prerequisite." *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1007 (11th Cir. 1982) (citing *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980)). Further, "it is well established that an amended complaint relates back to the date the motion to amend was originally filed." *Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, No. 10-61064-CIV, 2015 WL 13402137, at *3 (S.D. Fla. Mar. 13, 2015) (citing *Totura & Co., Inc. v. Williams*, 754 So. 2d 671 (Fla. 2000)). As the motion to amend was filed within the 90 days, the Third Amended Complaint is considered timely and Plaintiff can proceed on her Title VII claims.

3. FCRA Claims Procedural Bar

Defendants argue that Plaintiff's FCRA claims are procedurally barred for two reasons. Dkt. 172. First, she should have voluntarily dismissed her Second Amended Complaint because it contained allegations which had not yet been administratively exhausted. Since she did not do so and only amended her complaint again after the claims were administratively exhausted, Defendants argue these claims are procedurally barred. Second, Defendants argue that even if

the claims are not procedurally barred for failure to exhaust, they should be dismissed because Plaintiff failed to seek an administrative hearing after the FCHR conducted its investigation and found a no-cause determination.

Plaintiff argues that she properly exhausted her administrative remedies before bringing her claims to court or, alternatively, that she properly amended her complaint after the claims were exhausted. Plaintiff also argues that she was not required to seek an administrative hearing after the no-cause determination because the FCHR took over 180 days to make a determination.

A. Failure to Exhaust Administrative Remedies

Prior to bringing a civil lawsuit, the FCRA requires a plaintiff to file a charge of discrimination with the EEOC or FCHR within 365-days of the alleged discrimination. Fla. Stat. § 760.11(1) (2019). Because the FCRA is patterned after Title VII, courts routinely apply Title VII case law to discrimination claims brought under the FCRA. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). "A claim is time barred if not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

"Courts are 'extremely reluctant' to bar [FCRA claims] based on procedural technicalities and will allow judicial claims that 'amplify, clarify, or more clearly focus' the EEOC complaint allegations." *Hillemann v. Univ. of Cent. Fla.*, 167 F.

App'x 747, 749 (11th Cir. 2006) (citing *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004)). Even so, "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Gregory*, 355 F.3d at 1280). "Plaintiffs may not raise 'allegations of new acts of discrimination' in the judicial proceedings." *Id.* (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).[2]

Defendants cite to several cases in which a court dismissed an early complaint because it was filed before administratively exhausting remedies but then allowed a later complaint to proceed after the administrative remedies had been exhausted. Dkt. 172 at 2. Defendants argue Plaintiff's claims are procedurally barred because Plaintiff's initial Complaints were filed before she administratively exhausted her remedies and those Complaints were not dismissed, but rather they were amended later after the exhaustion of the second EEOC charge.[3]

---

[2] Defendants appear in a footnote of their latest filing, Dkt. 172, to be referencing an argument that some of Plaintiff's allegations fail to fall within the scope of her initial EEOC complaint. But this argument has not been clearly laid out before the Court. Instead, Defendants' briefing focused on dismissing claims if they failed to be administratively exhausted prior to filing in court. As a result, the Court will analyze that issue of whether a procedural bar is created when prior complaints could have been dismissed for failing to exhaust administrative remedies.

[3] Plaintiff argues that her claims about Dr. Knight and Access should be viewed by the Court as included in her initial EEOC charge and therefore administratively exhausted prior to her state court filings. As it is unnecessary for this analysis the Court does not make a determination on this issue.

Although well argued, the Court declines to adopt this logic. First, the Complaints Defendants argue should have been dismissed are not—and have never been—before this Court. Both Complaints before this Court—the Third Amended Complaint and the operative Fourth Amended Complaint—were filed after Plaintiff exhausted both of her EEOC charges. For the Court to go back and second guess the actions of the prior court would be an improvident step and speculative.

Further, Plaintiff amended her Complaint after exhausting her second EEOC charge which is the recourse that would have happened had the prior court dismissed her prior Complaints.[4] The rationale underlying much of Title VII and FCRA litigation is that courts are "extremely reluctant to allow procedural technicalities to bar claims[.]" *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (quoting *Sanchez*, 431 F.2d at 460–61). To retroactively determine that the earlier complaints were procedurally barred when they were filed—even though an amended complaint could be properly filed later—and therefore dismiss the operative Complaint conflicts with the reasoning in a long line of Title VII and FCRA cases.

---

[4] This matter is further complicated because all Parties agree that the claims relating to FMC in the initial state court complaints were procedurally exhausted by the first EEOC charge and properly raised. Defendants thus take issue with only a portion of the initial state court complaints.

The cases that Defendants rely on to support their argument that premature filing creates a procedural bar are distinguishable. In *Ayers* the court was concerned over the plaintiff trying to "circumvent the carefully-crafted procedural requirements set forth under the FCRA." *Ayers v. Wal-Mart Stores, Inc.*, 941 F. Supp. 1163, 1167 (M.D. Fla. 1996). In *Ayers*, the plaintiff filed her lawsuit and then requested to have the Commission terminate its investigation of her complaint before the end of the 180-day period. *Id.* Here, Plaintiff was not trying to avoid the Commission's authority by rushing into court. Instead, Plaintiff filed her claims in state court and then waited for the Commission to finish its investigation of her second EEOC charge before expanding on the allegations in the Third Amended Complaint. This is not the procedural circumvention that *Ayers* was trying to punish.

In *Sweeney*, the Court affirmed a grant of summary judgment because the complaint was filed prior to the expiration of the 180-day period based on the rationale that filing the claim divested the Commission of jurisdiction. *Sweeney v. Fla. Power & Light Co.*, 725 So. 2d 380, 381 (3d DCA 1998). However, courts since *Sweeney* have held that premature filing does not divest the Commission of its jurisdiction over the charge. *Webb v. Worldwide Flight Serv., Inc.*, 407 F.3d 1192, 1194 (11th Cir. 2005) ("Section 760.11(5) does not provide that a civil action that is filed prior to a reasonable cause determination, or the equivalent 180

day filing period set forth in section 760.11(8), divests the commission of jurisdiction."); *Jackson v. Worldwide Flight Servs., Inc.*, 960 So. 2d 3, 5 (3d DCA 2005) ("We reject [defendant's] contention that the Commission was divested of jurisdiction to correct the originally premature filing of [plaintiff's] claim."). So this reasoning does not well support summary judgment.

Therefore, regardless of whether the prior court could have dismissed the initial and first amended complaint based on the grounds Defendants cite, the current operative complaint—the Fourth Amended Complaint—was filed after the 180-day period. Defendants have not cited to any persuasive case law where a court granted summary judgment because a prior non-operative complaint was filed prior to the exhaustion of administrative remedies. Instead, the Court is persuaded by the long line of cases in which premature filings were merely dismissed without prejudice and the plaintiff was allowed to file an amended complaint when the administrative process was exhausted. The Court finds that the Plaintiff amending her own Complaints as the administrative process concluded satisfies the underlying rationale established in *Webb* and *Jackson*. The Court therefore denies summary judgment on this ground.

B. <u>Administrative Hearing Requirement</u>

Next, Defendants argue that even if Plaintiff exhausted her administrative remedies prior to filing suit, she still cannot proceed under FCRA because she did

not request an administrative hearing, as required in FCRA § 760.11(7), after receiving a no-cause determination.

Florida courts have consistently held that the FCRA "requires a liberal construction to preserve and promote access to the remedy intended by the Legislature." *Joshua v. City of Gainesville*, 768 So. 2d 432, 435 (Fla. 2000). "Additionally, because section 760.11(7) purports to abridge an individual's right of access to the courts, that section must be narrowly construed in a manner that favors access." *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 897 (Fla. 2002).

In *Woodham*, the Florida Supreme Court held "[r]eading the relevant provisions of the statute together clearly establishes that whenever the FCHR fails to make its determination within 180 days, even if the untimely determination is made before the filing of a lawsuit, the claimant may proceed to file a lawsuit under subsection (4)." *Id.* at 899. Defendants urge the Court to view this statement as mere dicta because this issue was not before the court in that case—a point made by the dissenting justice.

Even if viewed as dicta, the Court finds the reasoning in *Woodham* persuasive.[5] The FCHR issued it decision more than 180-days after the

---

[5] Although the Defendants urge the Court to ignore what they define as dicta in *Woodham*— where the Florida Supreme Court discussed the issue of a no-cause order issued after 180 days—

administrative Complaint was filed. Thus, Plaintiff was free to proceed under section 4 and not bound by the limitations in section 7.

Defendants rely on *Davis* to support their argument. *Davis v. Bob Evans Farms, LLC*, 649 F. App'x 869 (11th Cir. 2016). But *Davis* does not support the contention that because the FHCR contacted Plaintiff and Plaintiff provided them with more information, that those actions restarted the 180-day clock. *Id.* at 872. In *Davis*, the Commission issued a no-cause determination after 174 days. But the notice was mailed to Davis's residential address and not to his attorney. *Id.* His attorney requested the Commission rescind the initial dismissal notice and issue a new dismissal notice, which the Commission did. *Id.* After this second dismissal Davis opted to sue in state court rather than request an administrative hearing. *Id.* The issue in *Davis* was whether the plaintiff had to receive proper notice within 180 days, because it was undisputed that the Commission made a no-cause determination within 180 days. *Id.* In determining that the plaintiff did not have to receive proper notice within 180 days, the Eleventh Circuit emphasized that the language of the FCRA requires the Commission to make a determination within 180 days. *Id.* at 873. Here, it is undisputed that the Commission did not make a no-cause determination within 180 days of Plaintiff filing her charge, so the reasoning

the Defendants cited no case law in which a court did what they are requesting. The Court is not inclined to impose a new and conflicting interpretation of a Florida statute.

for requiring the plaintiff in *Davis* to request an administrative hearing does not apply.

The Defendants' argument that Plaintiff received a no-cause determination within 100 days of her identifying the issues at FCHR's request is equally unsupported by *Davis.* Dkt. 172 at 5. In *Davis*, the Commission made a no-cause determination within 180 days, as required by the statute. *Davis*, 649 F. App'x at 872. As a result, the Eleventh Circuit held that even if notice on the initial determination might have been insufficient, the plaintiff was still required to request an administrative hearing within 35 days of receiving the second notice of the no-cause determination. The statute requires that the Commission make a determination within 180 days, not merely that the Commission take an action within 180 days. Fla. Stat. § 760.11(8). So the fact that the Commission requested and Plaintiff provided additional information does not restart the clock. As the Commission failed to make a determination within 180 days, under *Woodham*, Plaintiff was not required to seek an administrative hearing prior to bringing these claims. Therefore, Plaintiff's claims are not procedurally barred.

4. Motion to Strike Plaintiff's Affidavit as a Sham

Finally, Defendants argue that the Court should strike as a sham Plaintiff's affidavit attached to her Memorandum in Opposition to the Motion for Summary Judgment. Dkt. 165 at 2–6; *see* Dkt. 156-1. The Court disagrees. Plaintiff's

answers in the affidavit are mostly contained within answers in her interrogatories or related to Neuspine, which occurred after the interrogatories were submitted.

Eleventh Circuit case law clearly establishes that "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). In such cases, the later affidavit should be disregarded as a sham. This rule is only to be applied "sparingly because of the harsh effect[.]" *Id.* Courts have "to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." *Id.*

Defendants cite to *Junkins* to support their argument. In *Junkins*, the defendant was a supplier of prefabricated buildings and the plaintiff was in the business of constructing prefabricated buildings. *See Junkins*, 736 F.2d at 656. Representatives from defendant contacted plaintiff saying they heard he was interested in buying a prefabricated building and to see if he would be interested in being a dealer for defendant. *Id.* at 657. In his deposition, the plaintiff made it clear three times that there was no condition attached to buying the building or that he had to buy the building from the defendant as a prerequisite to becoming a dealer

for defendant. *Id.* He further admitted that he knew his application to be a dealer had to go through a review board. *Id.* But in the plaintiff's affidavit, filed after the hearing on defendant's summary judgment motion, plaintiff claimed defendant's representative told him at that meeting he would be given a dealership with defendant if he purchased one of defendant's buildings. *Id.* This is a direct contradiction of his testimony on the key material fact and as such the court considered the later affidavit a sham.

The facts here vary drastically from *Junkins*. Plaintiff wrote about the Tower account in her supplemental response to Defendants' first set of interrogatories. Dkt. 85-4 at 2. When asked about her retaliation claims at her August 9, 2019 deposition Plaintiff referred to her interrogatory answers and said, "it has everything in there." Dkt. 170 at 323. Her interrogatory containing answers about Tower was Exhibit 88 at her deposition. Dkt. 170-8 at 31. Therefore, despite Plaintiff not mentioning Tower by name in her deposition, her responses in her affidavit are supplementing her past testimony, not directing contradicting it. Nothing in Plaintiff's affidavit is "inherently inconsistent" with her testimony or interrogatories. *See Junkins*, 736 F.2d at 658.

As for allegations regarding Neuspine, Plaintiff alleges this account was taken from her in August 2019, and that she was notified about it the morning of her deposition. The Court will not penalize Plaintiff for being unable to formalize

allegations on an account taken from her on or about the same day as her deposition. Further, in her deposition Plaintiff stated that the retaliation was ongoing, so her addition of Neuspine does not conflict with her prior testimony. Dkt. 170 at 324.

Therefore, the affidavit will not be struck from the record, but Defendants are granted leave to depose the Plaintiff on Neuspine.

## CONCLUSION

For the reasons stated above the Court denies Defendants' motion for summary judgment. Dkt. 128. The Court finds there are still issues of material fact that prevent summary judgment and there are no procedural bars requiring dismissal of Plaintiff's claims. The Defendants are granted leave to depose Plaintiff regarding Neuspine.

**DONE AND ORDERED** at Tampa, Florida, on February 3, 2020.


*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record